UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
TURNER CONSTRUCTION COMPANY,

                         Plaintiff,
                                              01 Civ. 2899 (RWS)
          - against -
                                              O P I N I O N
AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY, et al.,

                         Defendants.
----------------------------------------X

A P P E A R A N C E S:

        SAXE DOERNBERGER & VITA
        Attorneys for Plaintiff
        1952 Whitney Avenue
        Hamden, CT 06517
        By:  EDWIN L. DOERNBERGER, ESQ.
             Of Counsel

        BARRY, McTIERNAN & MOORE
        Attorneys for Defendant American Manufacturers Mutual
             Insurance Company
        Two Rector Street
        New York, NY 10006
        By:  SUZANNE M. HALBARDIER, ESQ.
             Of Counsel

        NIXON PEABODY
        Attorneys for Defendant Nationwide Insurance Company
        Clinton Square
        P. O. Box 31051
        Rochester, NY 14604
        By:  DAVID H. TENNANT, ESQ.
             Of Counsel

**Sweet, D.J.,**

The defendants American Manufacturers Mutual Insurance Company ("AMMIC"), Lumberman's Mutual Casualty Company ("LMCC") (collectively the "Trident Insurers") and Nationwide Mutual Insurance Company ("Nationwide") have moved under Rule 56, Fed. R. Civ. P., for summary judgment dismissing the complaint of plaintiff Turner Construction Company ("Turner"). For the reasons set forth below, the motion of the Trident Insurers is granted, and the motion of Nationwide is denied.

This action presents a dispute between insurers. Turner, the defendant in <u>Wausau Business Insurance Company v. Turner Construction Company, et al.</u>, 99 Civ. 0682 (RWS) (the "<u>Central Synagogue</u> action"), on behalf of its insurers, seeks to recover the amounts ultimately paid in settlement in that case against insurers of certain of the subcontractors who were also defendants. Issues of coverage, res judicata, and notice are presented.

## Prior Proceedings

The complaint in this action was filed on April 5, 2001 seeking to enforce certain insurance policies implicated by the trial and settlement of the <u>Central Synagogue</u> action in the fall of 2001.

Discovery has proceeded, and the instant motions were heard on November 3, 2004.

**The Facts**

The facts are obtained from the parties' Local Rule 56.1 Statements and are not in dispute except as noted below.

**The Project**

The Central Synagogue, a landmark synagogue at Lexington Avenue and 55th Street, New York, New York, entered into a construction management consulting agreement (the "Consulting Agreement") with Turner as of January 26, 1998, concerning renovation work to be done at the Synagogue in Phase III of an ongoing renovation project (the "Project"). Turner assumed certain responsibilities in connection with the Project.

Pursuant to Article 6 of the Consulting Agreement, Central Synagogue was required to name Turner as an additional insured or "cause its Contractors to name [Turner] as an additional insured on the Contractors' insurances."

Central Synagogue and AMIS Inc. ("Amis") entered into a construction management contract dated as of February 20, 1998, under which Amis agreed to serve as the general contractor for the Project. Pursuant to Article XXIII of the construction management contract between Amis and Central Synagogue, Amis agreed to add Turner as an additional insured, with the type of liability policies and limits

set forth in Article XXII and Exhibit 8-1 to that contract.  Pursuant to Article XXIII of the construction management contract between Amis and Central Synagogue, Amis further agreed to include the same requirement for insurance coverage in each of the subcontracts related to the Project so that Turner would be an additional insured under each subcontractor's liability policies.

In April 1998, Amis entered into a subcontract with Amtex Electrical Corp. ("Amtex") to perform electrical work in connection with the renovation.  This work included installing controllers for the attic fans and connecting the control circuit for the attic fans to the control wiring for the heating, ventilation and air conditioning ("HVAC") system and to the master fire alarm panel.

Also in 1998, the Central Synagogue entered into a contract with Trident Mechanical Systems, Inc. ("Trident") to provide HVAC in connection with the Project.  This included three new attic fans which were designed to be interconnected with the building's fire protection system in such a way that the fans would shut down automatically upon triggering by the building's fire protection system.

Central Synagogue also entered into a contract with Aris Development Corporation ("Aris") to provide roofing in connection with the Project including repairing the roof which had been cut out for the installation of the attic fans.

**The Fire and the Investigation**

Ferenc Petho ("Petho") was a Turner employee designated as Owners Representative on the Project.  He smelled smoke between 3:30 p.m. and 4:30 p.m. on August 28, 1998 which resulted from a fire initiated by the use of a torch on the roof by an Aris employee.

The Fire Department of the City of New York ("FDNY") was called at 5:09 p.m.  The attic fans were running and accelerated the fire.  Upon arrival, FDNY directed Petho and others to shut off electrical power to the Synagogue which was accomplished by Petho and FDNY shutting off the main circuit breaker in the basement.  Fire and water caused tens of millions of dollars of damage to the Synagogue.

Turner obtained from Amis shortly after the fire the identity of all subcontractors and vendors.

Turner notified its own insurer, Liberty Mutual Insurance Company ("Liberty Mutual") of the occurrence of the fire at Central Synagogue on August 28, 1998.  Liberty Mutual sent a field representative to the Synagogue on August 28, 1998 to begin investigating the fire and to conduct a field investigation on August 29, 1998.

Liberty Mutual initiated a fire origin and cause investigation on August 31, 1998, three days after the fire, and

hired General Claims Investigations Corporation ("GCIC") in September 1998 to assist in the investigation and instructed GCIC to obtain copies of all Fire Marshall reports pertaining to the fire.

An engineer retained by Liberty Mutual examined the fire scene on February 25, 1999 and reported that the roof vents fed oxygen to the fire and expanded the fire.

**The Policies**

In 1998, Turner obtained two liability insurance policies from Liberty Mutual: Policy RG1-621-004321-028 and Policy RT1-621-004172-838, which provided Turner with $10 million in coverage for the Central Synagogue fire.

Trident's contract with Central Synagogue contained the following language:

> The Contractor (Trident) hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever ... to all property caused by, resulting from, arising out of or occurring in connection with the execution of the Work, or in preparation for the Work ...
>
> ... Except to the extent, if any, expressly prohibited by statute and excluding from this indemnity such acts or omissions, if any, of the party indemnified for which it is not legally entitled to be indemnified by the Contractor under applicable law, should any claims for damage ... be made or asserted, whether or not such claims are based upon Owner's or Turner's alleged active or passive negligence or participation in the wrong or upon

any alleged breach of any statutory duty or obligation on the part of the Owner or Turner.  ...

The Contractor agrees to indemnify and save harmless the Owner and Turner, their officers, agents, servants and employees, from and against any and all such claims and further from and against any and all loss, cost, expense, liability, damage or injury ... that the Owner and Turner ... may directly or indirectly sustain, suffer or incur as a result thereof, and the Contractor agrees to and does hereby assume, on behalf of the Owner and Turner, ... the defense of any action at law or in equity which may be brought against the Owner or Turner ...

The "Work" is defined as the Central Synagogue Sanctuary and outlined in Attachment "A" to the contract.

Pursuant to the terms of this contract, Trident obtained a Certificate of Insurance naming Turner as an additional insured under general liability policy number BINDER55733 (effective dates 6/30/98 through 6/30/99) (general aggregate of $2,000,000) and excess liability policy number BINDER55735 (effective dates 6/30/98 through 6/30/99) ($10,000,000).

Dualstar Technologies Corporation obtained from AMMIC a primary policy which contained the following language regarding additional insureds:

* * *

6.  Any person or organization to whom or to which you are obligated by virtue of a written contract, agreement, or permit to provide such insurance as afforded by this policy is an insured, but only with respect to liability arising out of:

a. "Your work" for that insured by you.

The excess policy[1] contains the same language.

Nationwide issued two liability policies to Amtex in connection with Amtex's electrical work at Central Synagogue: Contractor Policy 66 AC 376-355-3001 M and Umbrella Commercial Liability Policy 66 MU 376 355 3003 M.

The Contractor's Liability Policy (Section 3) provided:

2.  **Duties in The Event of Occurrence, Claim Or Suit**

    a.   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

        (1)  How, when and where the "occurrence" or offense took place;

        (2)  The names and addresses of any injured persons and witnesses;

        (3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b.   If a claim is made or "suit" is brought against any insured, you must:

        (1)  Immediately record the specifics of the claim or "suit" and the date received; and

        (2)  Notify us as soon as practicable.

    You must see to it that we receive written notice of

---

[1] The named insured on the excess policy was also Dualstar.

the claim or "suit" as soon as practicable.

c.  You and any other insured must:

(1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit[.]

The Nationwide Umbrella Policy (Section 3), by a specific New York endorsement (CAS. 3331-A (7-97)), provided that Nationwide has "the right and duty to defend any suit against the insured seeking damages because of . . . property damage . . . to which this policy applies" (Section VII IV(A)(1)) and required the insured, "after an occurrence happens," to notify Nationwide (or one of its agents in New York State) "as soon as reasonably possible" (Section VIII(C)(1)(a)) and further required the insured to:

!  Tell us how, when and where the occurrence happened. (VII(C)(1)(b)).

!  Assist in obtaining the names and addresses of any injured persons and witnesses.  (VII(c)(1)(a)).

!  Cooperate in the investigation settlement or defense of any claim or suit.  (VII)(C)(2)(a)).

!  Immediately send us copies of any notice or legal papers received in connection with the occurrence. (VIII(C)(2)(b)).

Tennant Aff. ¶ 5, Exh. B at 11.

**The Litigation**

On January 29, 1999, Wausau Business Insurance Company ("Wausau"), the insurer of the Central Synagogue, commenced its lawsuit against Turner and others in the Southern District of New York and on or about February 25, 1999, the Central Synagogue commenced a lawsuit against Turner and others in New York County State Supreme Court. The actions were ultimately consolidated.

Turner commenced third-party actions in both state and federal court in December 1999 naming Trident, Atkinson Coven Finberger Engineers, LLP, engineers on the Project, and Schuman Lichenstein Claman Efron Architects, architects on the Project. Turner did not include Amtex.

Jesus Marin ("Marin"), an employee of Amtex, testified by deposition on December 18, 2000 that he had wired the combination controller/starters for three attic fans, connected the yellow and red wires, and by-passed the internal start-stop switch inside each attic fan controller so that the fans were running continuously and not subject to automatic controls. He was represented by counsel.

As of August 20, 1998, an employee of Trident had removed the master fire alarm panel from the electrical room in the lower level and thereby disabled the Synagogue's fire alarm system. ICE Controls, a subsidiary of Dualstar and a sister company to Trident, was the subcontractor responsible for installing the control wiring for the HVAC system.

As a consequence of the deposition, Turner concluded that Amtex was responsible for the spread of the fire by reason of the hard wiring of exhaust fans installed by Trident which were running at the time of the fire. Thereafter, on February 8, 2001, Turner filed a second amended third-party complaint naming Amtex as an additional defendant. Because of the anticipated spring trial date, the claims by Turner against Amtex were severed from the trial of the main action.

The trial of the Central Synagogue by jury was commenced on May 9, 2001 and was completed on June 4, 2001. Near the end of the trial, Trident reached a settlement with Wausau and the Central Synagogue in the amount of $1.25 million. The jury was advised of the settlement which was approved and was the subject of a court opinion, 2001 U.S. Dist. LEXIS 7294 (S.D.N.Y. 6/5/01), 151 F. Supp. 2d 488 (S.D.N.Y. 2001).

The trial was bifurcated to allocate liability first, with a second trial to determine damages. The liability allocation was determined as follows: Turner, 50%, Aris, 30%; Amis, 15%; Central Synagogue, 5%; Trident, 0%.

Prior to the commencement of the damages portion of the trial, a settlement was reached[2] and the following amounts were paid

---

[2] Each of the other defendants in the case, except Amtex, also made additional contributions to the overall settlement.

by or on behalf of Turner:

$11,760,150.00 to Wausau and $744,506.30 attorneys' fees; $4,159,859.00 to Central Synagogue and $205,171.41 expenses; $25,000.00 to Merrimack Mutual Insurance Company; $5,000.00 to Nationwide; $5,000.00 to Great Northern Insurance, totaling $16,882,186.71.

The amounts were paid by Turner's insurers, with the exception of $31,500.00 in expenses, which were paid by Turner for settlement of issues regarding a bill of costs submitted by Trident. In addition, Turner made a contribution of $150,000.00 to Central Synagogue for which no claim is made in this case. This settlement was reached prior to the entry of a final judgment.

**Notice**

On September 1, 1998, Turner provided written notice to Trident and Federal Insurance Company and Gerling America Insurance concerning Turner's potential claims against Trident related to the August 28, 1998 fire.

On September 1, 1998, Turner provided written notice to Amis and its insurance carriers concerning Turner's potential claims against Amis related to the August 28, 1998 fire.

Turner sent letters dated September 1, 1998 to Amis and Trident and their primary and excess insurers demanding defense and indemnification.

On January 30, 2001, following the deposition of its employees, Amtex provided formal notice to Nationwide of the potential application of its policies.

As set forth above, on February 8, 2001 Turner filed its third party complaint against Amtex.

On March 12, 2001, Nationwide sent a letter to Turner, among others, disclaiming liability to Turner under the Nationwide policies.

On September 10, 2001, Turner demanded that Nationwide participate in post-trial settlement discussions.

**The Conclusions**

**The Summary Judgment Standard**

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>SCS</u>

Communications, Inc. v. Herrick Co., Inc., 360 F.3d 329, 338 (2d Cir.2004); see generally 11 James Wm. Moore, et al., Moore's Federal Practice ¶ 56.11 (3d ed. 1997 & Supp. 2004). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to comment jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (internal citations omitted). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also R.B. Ventures, Ltd. v. Shane, 112

14

F.3d 54, 57 (2d Cir. 1997).  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>see</u> <u>also</u> <u>Quarles v. Gen. Motors Corp.</u>, 758 F.2d 839, 840 (2d Cir. 1985) ("[T]he mere existence of factual issues -- where those issues are not material to the claims before the court -- will not suffice to defeat a motion for summary judgment.").

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); <u>Gibbs-Alfano v. Burton</u>, 281 F.3d 12, 18 (2d Cir. 2002). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." <u>Richardson v. Selsky</u>, 5 F.3d 616, 621 (2d Cir. 1993).  The non-movant cannot escape summary judgment, however, "merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture," <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation marks and citations omitted); <u>accord</u> <u>Giordano v. City of New York</u>, 274 F.3d 740, 749-50 (2d Cir. 2001), particularly where such speculation is unsubstantiated.  <u>See</u> <u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d 93, 101 (2d Cir.2001); <u>Scotto v. Almenas</u>, 143

F.3d 105, 114 (2d Cir.1998).  In other words, the non-movant must invoke more than just "metaphysical doubt as to the material facts." Matsushita Elec. Indus., 475 U.S. at 586, 106 S.Ct. 1348.  In order to defeat a motion for summary judgment, the non-moving party must offer sufficient evidence to enable a reasonable jury to return a verdict in its favor.  See Anderson, 477 U.S. at 248; Byrnie, 243 F.3d at 101; Scotto, 143 F.3d at 114.

## The Motion of AMMIC and LMCC for Summary Judgment Based Upon Res Judicata is Granted

AMMIC and LMCC as insurers of Trident have contended that Turner was not a named insured under their policies, that Turner does not have standing, and that the jury verdict absolving Trident of negligence bars the application of their policies.  In addition, the Trident insurers have moved to dismiss Turner's claim that the Trident settlement was illegal, a position to which Turner has offered no opposition.  As set forth below, although Turner was covered initially by the AMMIC and LMCC policies and has standing, the jury verdict established that the injury to Turner did not result from Trident's work.

Because the court's jurisdiction is premised on diversity of citizenship, New York law applies on the substantive claims.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941); McGrath v. Toys "R" Us, Inc., 356 F.3d

246, 249 (2d Cir. 2004); <u>Lazard Freres & Co. v. Protective Life Ins. Co.</u>, 108 F.3d 1531, 1538-39 (2d Cir. 1997); <u>Totalplan Corp. of America v. Colborne</u>, 14 F.3d 824, 832 (2d Cir. 1994).

### 1. Turner Was An Insured

AMMIC and LMCC have noted that although a certificate of insurance was provided by Trident, Turner was not added as an insured to either the AMMIC or LMCC policies. However, both policies provide that an insured is any organization to which Trident was "obligated by virtue of a written contract" to insure. (AMMIC & LMCC Exhibit H & I). When Turner was engaged as construction manager on the Project, Central Synagogue agreed in writing that each contractor would name Turner as an additional insured. The Construction Management Agreement provided in relevant part as follows:

> ARTICLE 6
> INSURANCE
>
> ... the Owner [Central Synagogue] shall name the Construction Manager [Turner] an additional insured party or cause its Contractors to so name the Construction Manager [Turner] an additional insured party on the Contractor's insurances.

The contract between Trident and Central Synagogue provides in Article XXIII that:

> Before commencing the Work, the Contractor [Trident] shall procure and maintain, at its own expense, until completion

and final acceptance of the Work at least the following insurance from insurance companies satisfactory to the Owner and Turner:

...

2. COMPREHENSIVE GENERAL LIABILITY INSURANCE INCLUDING COMPLETED OPERATIONS, CONTRACTUAL LIABILITY INSURANCE AGAINST THE LIABILITY ASSUMED HEREINABOVE, and including CONTRACTORS PROTECTIVE LIABILITY SERVICE if the contractor sublets through another all or any portion of the Work, with the following minimum limits: Combined Single Limit 45,000,000.00 ...

The Owner and Turner shall be named as additional insureds under these policies of insurance. (emphasis added).

Pursuant to the policy provisions at issue, the Trident Insurers agreed to provide primary insurance to any party with whom Trident had contracted in writing for insurance to apply on a primary basis. Turner is, therefore, an additional insured under the policies at issue.

AMMIC and LMCC have also challenged Turner's standing since the settlement amounts to a large extent were paid by its insurers.

New York CPLR § 1004 provides that:

[e]xcept where otherwise prescribed by order of the court, an ... insured person who has executed to his insurer either a loan subrogation receipt, trust agreement, or similar agreement ... may sue or be sued without joining with him the person for or against whose interest the action is brought.

When an agreement or receipt has been executed between an

insured and insurer, New York courts have rejected the defense that an insured is not entitled to maintain an action because it had already received payment from a different source and, therefore, has not suffered any damages. See <u>Faraino v. Centennial Insurance Company</u>, 103 A.D.2d 790, 477 N.Y.S.2d 664 (2d Dep't 1984) (insured not barred from bringing action against alleged wrongdoer after insured executed loan receipt in favor of insurer upon receipt of full payment less deductible for damages to property in negligence action).

Turner and its insurers signed an agreement which provided that, "Turner will diligently pursue litigation against both Kemper and Nationwide." (Turner, Exhibit 13).[3] The agreement further provides that, "The Additional Insured Litigation will continue to be controlled by Turner." <u>Id.</u> Because Turner and its insurer executed an agreement regarding the present litigation, Turner has standing to pursue the present action.

**2.** **The Trident Verdict is Res Judicata and the Coverage Was Not Triggered**

According to Turner, under New York law the language "arising out of your work" in the context of an "additional insured" clause of an insurance policy "focuses not upon the precise cause of the accident . . . but upon the general nature of the operation in the course of

---

[3] In the course of the litigation without objection AMMIC and LMCC, both Kemper companies, were correctly named as the Trident insurers in place of Kemper.

which the injury was sustained." <u>See</u> <u>Lim v. Atlas-Gem Erectors, Inc</u>., 225 A.D.2d 304, 638 N.Y.S.2d 946 (1st Dep't 1996). <u>See</u> <u>also</u> <u>Nuzzo v. Griffin Technology Inc.</u>, 222 A.D.2d 184, 643 N.Y.S.2d 802 (4th Dep't 1996).

It is Turner's position that because Trident was the HVAC contractor for the Project and the fire was started by an employee of Aris, the roofing subcontractor, working on the roof that had been cut out for the installation of the air conditioning units installed by Trident, but for the installation of the air conditioning units in the towers by Trident, the fire would not have occurred. At the least, Turner contends, a triable issue of fact exists as to whether Trident had any liability for the events surrounding the fire.

The phrase "your work" has been broadly interpreted where a prime contractor, sued by a plaintiff, seeks additional insured status under the policy of plaintiff's employer. <u>See</u> <u>e.g.</u>, <u>Consolidated Edison v. USF&G</u>, 266 A.D.2d 9, 697 N.Y.S.2d 620 (1st Dep't. 1999). In that case, the policy language was triggered because the employee's injury arose out of the "work" by the subcontractor-employer for the site owner. <u>Accord</u> <u>Structure Tone, Inc. v. Component Assembly Systems</u>, 275 A.D.2d 603, 713 N.Y.S.2d 161 (1st Dep't. 2000) (even where the injured worker was not employed directly by the entity who was contractually obligated, but rather by that entity's subcontractor, the policy language was still triggered because the injury of the employee clearly arose from the "work" of the subcontractor).

However, until it is determined that a contractor such as Trident is responsible for the damage, no such obligation is triggered. In <u>AIU Insurance Co. v. American Motorists Ins. Co.</u>, 292 A.D.2d 277, 740 N.Y.S.2d 296 (1st Dep't. 2002), the First Department modified a lower court's conclusion that St. Paul had an obligation to defend the general contractor and owner. There, St. Paul's insured Forest Electric Corp. was not the employer of the injured plaintiff, and thus the plaintiff's work did not necessarily arise out of Forest's work. However, the court held that Forest might be found liable by a jury because "by failing to clean up the area [Forest may be] responsible for the debris that caused the [plaintiff's] slip and fall, but that remains to be determined in the underlying action." <u>Id.</u> at 279. The court held that without a finding of liability against Forest, its insurer was not obligated to defend the owner and general contractor.

Thereafter, the First Department reversed a lower court's denial of summary judgment to Forest, holding that the proof offered in the summary judgment papers was legally insufficient. The trial court had erred in finding as a matter of law that the injury arose out of Forest's work at the site. <u>AIU Insurance Co. v. American Motorists Ins. Co.</u>, 8 A.D.3d 83, 778 N.Y.S.2d 479 (1st Dep't. 2004). <u>See</u> <u>also</u> <u>Petracca v. Capri Const. Corp.</u>, 264 A.D.2d 829, 830, 695 N.Y.S.2d 403 (2d Dep't. 1999) (holding that "[b]ased upon the jury verdict in the underlying action, it must be concluded that the injuries suffered . . . did not arise from the subcontractor's work"); <u>Greater New York Mutual Ins. Co. v. Mutual Marine Office</u>, 3 A.D.3d 44, 49, 769 N.Y.S.2d

234 (1st Dep't. 2003) (finding that "in the construction field context, the general contractor is held to be an additional insured under the subcontractor's policy where, typically, the injury occurs to an employee of the subcontractor.").

Here, the jury concluded that the fire was not caused or spread by Trident's work and consequently the damage did not "arise from" Trident's work. <u>Petracca</u> at 830.

Turner has contended that it is not estopped from relitigating the issue of Trident's liability because the "underlying action was dismissed prior to any final judgment, and thus no alleged findings are subject to res judicata." (Memorandum in Opposition to Motion by AMMIC and LMCC, p.18). However, "a stipulation dismissing an action with prejudice can have the preclusive effect of res judicata." <u>Samuels v. Northern Telecom, Inc.</u>, 942 F.2d 834, 836 (2d Cir. 1991).

In <u>Geron v. County of Nassau</u>, No. 95 Civ. 3994 (LMM), 2004 WL 639615 (S.D.N.Y. Mar. 30, 2004), it was held that "a stipulation of discontinuance with prejudice will have the same preclusive effect as a judgment on the merits" (citations omitted). <u>Id.</u> at *6. Not only is there preclusion on matters actually litigated in the prior action, but Turner is barred from relitigating "all relevant issues which could have been but were not raised and litigated in the suit." <u>Id.</u> <u>Accord</u> <u>Schwartzreich v. E.P.C. Carting Co., Inc.</u>, 246 A.D.2d 439, 668 N.Y.S.2d 370 (1st Dep't. 1998).

In <u>Commer v. McEntee</u>, 283 F. Supp. 2d 993 (S.D.N.Y. 2003), a plaintiff had entered into a stipulated consent order dismissing the claims in a prior action and that prior "settlement agreement operates as a final judgment for res judicata purposes." (citations omitted). <u>Id.</u> at 999.

Here, Turner and its insurers entered into a settlement of the underlying action. Instead of pursuing its appeal against Trident, which was indeed filed and later withdrawn with prejudice, Turner and its insurers dismissed the action with prejudice pursuant to Rule 41, Fed. R. Civ. P.

The authorities cited by Turner are distinguishable. In <u>Jiminez</u>, the claim was not decided in the earlier action. The lower court "specifically declined to determine [the issue of consequential damages]" because the second action was pending; accordingly there was no res judicata or collateral estoppel effect. <u>Jiminez v. Shippy Realty Corp</u>., 213 A.D.2d 377, 378, 622 N.Y.S.2d 983, 985 (2d Dep't. 1995); <u>Plattsburgh Quarries, Inc. v. Palcon Ind. Inc.</u>, 129 A.D.2d 844, 513 N.Y.S.2d 861 (3d Dep't 1987) holds that where a prior action is dismissed on a technicality at the pleading stage, it is not dismissed on the merits. Neither case was in the same procedural status as the underlying one here: a jury had determined Turner's liability and Trident's lack of liability arising out of the fire.

Turner has also cited <u>Marvel Characters, Inc. v. Simon</u>, 310

F.3d 280 (2d Cir. 2002). There, the court's decision turned on a "comprehensive revision" of the Copyright Act of 1976. The court affirmed the district court's conclusion that the "author" of a copyright, who filed the subsequent action in response to the 1976 change, was not precluded from litigating his rights under the 1976 Act.

However, the court recognized that there can be collateral estoppel where a settlement is reached, and there are "specific findings sufficient for a subsequent court to conclude that certain matters were actually decided." Id. at 289 (quoting Motrade v. Rizkozaan, Inc., No. 95 Civ. 6545, 1998 WL 108013, at *5 (S.D.N.Y. Mar. 11, 1998)). Because the earlier settlement document did not include a finding "as to whether (the author) authored the Works independently . . . or whether . . . it was created as a work for hire," there was no preclusive effect to the earlier settlement. Id.

In Harriman Estates Dev. Corp. v. Gen. Acc. Ins. Co., 309 A.D.2d 575, 765 N.Y.S.2d 338 (1st Dep't 2003), the court dismissed a declaratory judgment, where the insurer (Transcontinental) sought to obtain "additional insured" status for its insured homebuilder (Harriman) under a contractor's (X Traire) policy. In the underlying action for personal injuries to the contractor's employee, the contractor obtained summary judgment on the third party indemnity claim; the lower court found that indemnity was only triggered "for liability 'arising out of or in any way relating to the work performed

. . . by [X Traire] [for Harriman] . . . under this contract.'" <u>Id.</u> at
575 (quoting the original contract between the parties).  Accordingly,
the insurer's claim for "additional insured" status was dismissed
because the lower court "necessarily decided that the injuries claimed
therein did not arise out of [the contractor's work] for Harriman."
<u>Id.</u>  The insurer was thus collaterally estopped from asserting coverage
in the subsequent action.  <u>Id.</u>  Here as well, Turner's claims must fail
because a jury concluded that Trident was not liable.

All of the facts relating to Trident's liability which Turner
asserts create a triable issue were presented to the jury in the
<u>Central Synagogue</u> Action.  Trident was found not responsible, a finding
which Turner cannot now relitigate.

In addition, the Trident Insurers' motion to dismiss the
claim by Turner that its settlement was illegal is granted on the basis
of the authorities cited by the Trident Insurers, unopposed by Turner.

## The Motion of Nationwide for Summary Judgment Based Upon Untimely Notice is Denied

Nationwide has urged that timely notice is a condition
precedent to any coverage and that Turner failed to satisfy this
requirement.  Nationwide has also contended that under the terms of its
policies, Turner is not insured.  Under the circumstances of this case,
both contentions are unavailing for the reasons set forth below.

## 1.  **Turner is an Insured**

Nationwide has maintained that Turner was not an additional insured under the contractor's policy since Amtex, the named insured, was not performing work for Turner.  However, the policy provides by way of endorsement that "who is an insured" was amended to include Turner "to the extent that [Turner] is held liable for your acts or omissions arising out of and in the course of operations performed by [Turner] by you or your subcontractor."  (Nationwide Exhibit A).

Turner's role as construction manager was "to advise and assist in [Central Synagogue's] management of Contractors and other agents of [Central Synagogue] involved in the project for HVAC and Auditorium Finishes 'Phase III' work at the sanctuary building." (Nationwide Exhibit E).  Amtex performed electrical work within the scope of the Phase III renovation project which arguably was responsible for the spread of the fire.  Turner was charged with negligence in supervising the Project, including Amtex.  Turner's liability for management and supervision did not exclude Amtex and no such contention is made by Nationwide in its reply.

Furthermore, the Nationwide Umbrella Policy does not have the same language as the contractor's policy.  The Umbrella Policy provided that an insured was "Anyone for whom you have agreed in writing to provide such insurance as is provided in this policy, but only for operations performed by you or on your behalf . . ."  In the contract between Trident and Amis, Trident agreed to provide the insurance set

forth in the Nationwide Umbrella Policy.  As a consequence, Turner was covered by the Nationwide policies.

## 2.    **The Late Notice is Excused**

Under a number of New York authorities, compliance with the notice provisions of an insurance policy is a condition precedent to the insurer's liability, and the insured's failure to comply with these provisions relieves the insurer of liability.  Axa Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus., Inc., 84 F.3d 622, 624-25 (2d Cir. 1996); State of N.Y. v. Blank, 27 F.3d 783, 793 (2d Cir. 1994) ("where the insured fails to comply with [the notice requirement], the insurer is relieved of its duty not only to indemnify, but also to defend the insured"); American Home Products Assurance Co. v. International Ins. Co., 90 N.Y.2d 433, 661 N.Y.S.2d 584, 684 N.E.2d 14 (1997) (failure to satisfy the notice requirement vitiates coverage under New York law); Security Mutual Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 905, 293 N.E.2d 76, 79 (1972) (insured's late notice is a complete and total bar to coverage).

The insured may be excused for its delay in providing notice only where it can establish: (1) that the insured lacked knowledge of the incident; or (2) that the insured believed in good faith, after conducting a reasonable investigation, that the accident presented no possibility of the insured being held liable.  White v. City of New York, 81 N.Y.2d 955, 957, 598 N.Y.S.2d 759, 760, 615 N.E.2d 216, 217

(1993). <u>See</u> <u>Travelers Insurance Co. v. Volmar Construction Co., Inc.</u>, 300 A.D.2d 40, 42, 752 N.Y.S.2d 286, 289 (1st Dep't 2002) (also recognizing cognizable excuse if insured did not know policy existed). The insured has the burden of showing the reasonableness of any delay in providing notice. <u>White</u>, 81 N.Y.2d at 957.

The fire occurred at the Central Synagogue on August 28, 1998. Turner was serving as the construction manager for the renovation work being performed at the Synagogue and immediately notified its own liability carrier, Liberty Mutual Insurance Company, about the fire on the very day it occurred.

Under New York law, "an insured's good-faith belief in nonliability, when reasonable under the circumstances, may excuse a delay in notifying an insurer of an occurrence or potential claim." <u>Reynolds Metal Company v. Aetna Casualty & Surety Company</u>, 259 A.D.2d 195, 696 N.Y.S.2d 563 (3rd Dep't 1999).

Similarly, in <u>Merchants Mutual Ins. Co. v. Hoffman</u>, 56 N.Y.2d 799, 452 N.Y.S.2d 398, 437 N.E.2d 1155 (1982), the court held the following:

> When the facts of an occurrence are such that an insured acting in good faith would not reasonably believe that liability on his part will result, notice of the occurrence given by the insured to the insurer is given "as soon as practicable" if given promptly after the insured receives notice that a claim against him will in fact be made.

Even if an insurance company shows that the policyholder's notice was, in fact, untimely, if the policyholder offers evidence of an excuse or mitigating circumstances, the issue of the reasonableness of the timing of the notice is a question of fact.  See, e.g., Reynolds Metal, 259 A.D.2d 195; Eveready v. Chavis, 150 A.D.2d 332, 540 N.Y.S.2d 860 (2d Dep't 1989); Avondale Indus., Inc. v. Travelers Indem. Co., 774 F. Supp. 1416 (S.D.N.Y. 1991); Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y.2d 12, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (1979).

Here, there was no basis upon which a claim of negligence could be made against Amtex, which was responsible for the installation of the fans, until the deposition of Amtex by Marin.  Indeed no claim against Amtex had been made by Wausau, Central Synagogue, Turner or any of the other parties.  It was only the testimony of Marin that revealed the condition of the wiring which Turner then claimed contributed to the acceleration of the fire.

Turner was not required to provide notice under the Umbrella Policy unless and until it was clear that the excess policy would be triggered.  An insured's "duty to notify each excess insurer accrue[s] when the circumstances known to [the insured] would have suggested a reasonable possibility of a claim that would trigger that excess insurer's coverage." Olin Corp. v. Insurance Co. of North America, 743 F. Supp. 1044, 1054 (S.D.N.Y. 1990).  New York law traditionally recognizes the difference between notice requirements to primary and excess insurers.  See Grow-Kiewit-MK-McLean Grove v. Lexington Ins.

Co., 232 A.D.2d 329, 649 N.Y.S.2d 18 (1st Dep't 1996). Even assuming Turner was under a duty to notify Nationwide "as soon as reasonably possible," it was not "reasonably possible," to notify Nationwide until it learned that Nationwide policies were implicated, that is, after the depositions of the Amtex employee. Furthermore, specific to the excess policy, Turner was under no obligation to provide notification to Nationwide until it was clear that coverage under the Umbrella Policy could be implicated.

In Reynolds Metal Co. v. Aetna Cas. & Sur. Co., 259 A.D.2d 195, 696 N.Y.S. 563 (3d Dep't 1999), the Appellate Division reversed the grant of summary judgment to the defendant, excess insurer. The court recognized that the insured, Reynolds, had no actual estimates for cleanup costs prior to its notice. The court, therefore, concluded that the excess insurers failed to present sufficient evidentiary facts demonstrating Reynolds' knowledge prior to giving notice that its primary policies would be exhausted, thereby implicating the excess insurance coverage.

As found above, on January 30, 2001 Amtex gave notice to Nationwide of a potential claim. On February 8, Turner commenced a third-party action against Amtex. On March 12, by letter, Nationwide disclaimed liability to Turner under its policies. Turner's first demand to Nationwide was made on September 10, 2001 in which it was requested that Nationwide participate in the settlement discussions. Notice by Turner at that point was purely a formality given the notice

by Amtex and the commencement of litigation by Turner.  By that time
Nationwide and Turner had agreed to disagree about coverage.

In the absence of separate notice by Turner to Nationwide,
unless Turner stood in the same status as Amtex with respect to
coverage, there was no reason for Nationwide to send a letter to Turner
declining coverage.  In addition, there was no action which Turner
could have taken at that time to have Nationwide voluntarily cover
these claims since Nationwide had already declined coverage.

According to Nationwide, within days of the fire, Turner knew
everything it needed to know to make a claim under the Nationwide
policy.  Turner knew that the attic fans installed by Trident were a
contributing factor in the fire because its own employee observed the
fans in operation during the fire and Turner received an FDNY report
specifically blaming the attic fans for exacerbating the fire.
Moreover, Turner knew that Amtex had the contractual responsibility to
run electrical power to the attic fans and that an Amtex electrician
had in fact wired the attic fans to run.  What Turner did not know was
the manner in which Amtex had wired the attic fans.

According to Nationwide, at the very least, Turner was
required promptly to investigate the fire and Amtex's involvement in
energizing the fans, citing Empire City Subway, 35 N.Y.2d 8, 13-14, 358
N.Y.S.2d 691, 695, 315 N.E.2d 755, 760 (1974).  According to
Nationwide, Turner's failure to conduct a reasonable inquiry into the

possibility of coverage under the Nationwide policies prevents Turner from offering any excuse now for its late notice.  See <u>Security Mut. Ins. Co.</u>, 31 N.Y.2d at 443 (failure to exercise reasonable care and diligence in ascertaining the facts about the alleged accident and in evaluating potential liability bars any excuse that delay was attributable to lack of knowledge or belief in non-liability); <u>Green Door Realty Corp. v. TIG Ins. Co.</u>, 329 F.3d 282, 288 (2d Cir. 2003) (failure to investigate rendered delay unreasonable as a matter of law).  Nationwide has cited New York law that rejects the argument that an insured may wait to provide notice until depositions develop the factual record as to liability.  <u>Empire</u>, 35 N.Y.2d at 14; <u>Reliance Nat'l Ins. Co. v. Royal Indem. Co.</u>, No. 99 Civ. 10920 (NRB), 2001 WL 1670609 at *2 (S.D.N.Y. Dec. 28, 2001) (ignorance of facts until deposition is no excuse for late notice).

However, the recent decision in <u>Great Canal Realty Corp. v. Seneca Insurance Co., Inc.</u>, 13 A.D.3d 227, 787 N.Y.S.2d 22 (1st Dep't. 2004), upheld the denial of summary judgment sought by the insurer based upon late notice.  After a careful review of the authorities in the area of notice, the Appellate Division in an opinion which appears to constitute a sea change with respect to the "no prejudice exception," upheld that denial noting two factual issues, the validity of the excuse for the late notice and prejudice to the insurer.  The same issues have been presented here and require the denial of Nationwide's motion.  Under these circumstances, Turner's notice was timely.  In addition and alternatively under <u>Great Canal Realty Corp.</u>,

Nationwide has failed to establish any prejudice resulting from Turner's notice.

## Conclusion

For the reasons set forth above, the motion of AMMIC and LMCC to dismiss Turner's complaint is granted.  The motion of Nationwide for a similar dismissal is denied, and a pretrial

conference will be held on May 18, 2005, or on such other date as the parties shall fix.

It is so ordered.

New York, NY
April  29  , 2005

ROBERT W. SWEET
U.S.D.J.